THE BROWNE-CHAPIN LUMBER COMPANY *et al.*

*v.*

THE UNION NATIONAL BANK OF CHICAGO.

*Filed at Ottawa January 20, 1896.*

458:37 LRA34

1. APPEALS AND ERRORS—*insolvency proceedings—appeal lies to Appellate Court.* An appeal lies to the Appellate Court from a decree or judgment of the county court in a suit to declare transfers and mortgages made by an insolvent to be an assignment for the benefit of creditors.

2. INSOLVENCY—*what essential to an assignment, under the statute.* To create an assignment, within the act on voluntary assignments, the property must be conveyed to a trustee or assignee, who is to sell it absolutely, and not on a contingency, and distribute the proceeds among the creditors. The assignment must pass the legal and equitable title, with no right of redemption in the debtor.

3. SAME—*what is not an assignment for creditors.* Transfers of accounts due an insolvent to a bank as security for the payment of a debt to it, the surplus going to the insolvent, and not to creditors, with chattel mortgages given as security for other indebtedness, do not constitute an assignment for creditors.

4. SAME—*statute as to assignments does not prevent preferences.* A debtor has the same right to secure a debt by the execution of a mortgage that he had before the Assignment act became a law.

*Union Bank v. Browne-Chapin Lumber Co.* 59 Ill. App. 423, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the County Court of Cook county; the Hon. CHARLES H. DONNELLY, Judge, presiding.

This was a proceeding by appellants, in the county court of Cook county, praying that certain transfers in writing, which had theretofore been executed by one Samuel B. Barker, a resident of Cook county, to the Union National Bank of Chicago, and to Mrs. F. M. Perkins in trust for the bank, conveying and transferring certain property and assets in trust, be declared to be a voluntary assignment. The property transferred was alleged to be worth about $900,000. It was not averred in the petition that Barker had, in truth and in fact, executed an assignment for the benefit of creditors, but it was alleged the transfers amounted, in law, to an assignment.

The Union National Bank, named as defendant, put in an answer, in which it denied substantially all the material allegations of the petition, and alleged that on May 29, 1893, Barker was indebted to the respondent to a large extent, and the firm of A. H. Caryl & Co., composed of Alexander H. Caryl and Samuel B. Barker, was also indebted to respondent, and on that day Barker and the firm of Caryl & Co. severally executed to the respondent, as security for such indebtedness, transfers of their outstanding accounts, bills receivable, etc.; denied that these transfers were made in trust for any other creditor of Barker or Caryl & Co. or in pursuance of any fraudulent purpose, but averred that the same were made solely for the purpose of securing money justly due from Barker and Caryl & Co., and with no agreement with reference thereto not shown on the face of the instruments, and that these were the only conveyances executed by Barker or Caryl & Co. to respondent on May 29, 1893, or at any time thereafter; averred that on May 29, 1893, Barker was indebted to F. M. Perkins, and on that day executed to said Perkins chattel mortgages in the usual form, covering property situated in Illinois, Wisconsin and Michigan; denied that these conveyances were made for any fraudulent or improper purposes, or with any secret trust or agreement, or that the property covered thereby was

conveyed in trust for any other creditor of Barker, or that said mortgages were in any way fictitious, fraudulent or illegal; denied that the property covered by said mortgages was delivered to the respondent; denied that Barker ever made an assignment in writing, or otherwise, for the benefit of his creditors under the statute of Illinois relating to voluntary assignments, or any instrument purporting to be or which was in fact such an assignment; denied that Barker intended to, or did in fact, assign to this respondent, or any other person, as assignee or trustee, any of his property for the benefit of his creditors, or that he, at any time prior or up to and including the transactions above referred to, had determined to make a general assignment, or to surrender the dominion and control of his property by means thereof; averred that in all of the transfers made by Barker, as above set forth, he has an equity of redemption, and is entitled to redeem the said property upon paying the debts for the security of which the property was so transferred; denied that the court has any jurisdiction over the respondent, or over the property transferred to it by Barker or transferred to the other persons mentioned, or over the subject matter of this controversy, and claimed the same benefit of the answer as though it had specially pleaded or demurred to the petition.

A hearing was had on the pleadings and evidence, and the court, among other things, found that petitioners are creditors of Samuel B. Barker, as alleged in said petition, and that on or about the 29th day of May, 1893, the said Barker made a voluntary assignment of substantially all his property to the said Union National Bank of Chicago, in trust, and that the same, in law, constitutes a voluntary assignment for the benefit of the creditors of the said Barker.    The court entered a decree removing the Union National Bank of Chicago as assignee and appointed John McLaren in its stead, and directed him to take possession of the estate of Barker and administer the same pursuant

to the statute, and the bank was ordered to turn over all property which had come to its possession by virtue of the assignment, to the assignee so appointed.    From the decree of the county court the bank appealed to the Appellate Court.    The Appellate Court overruled a motion to dismiss the appeal, reversed the decree of the county court, and dismissed the petition.

E. H. GARY, HOPKINS, THATCHER & DOLPH, and J. A. GRIFFIN, for appellants:

In *Preston* v. *Spaulding*, 120 Ill. 208, in speaking of assignments, the court said: "The statute is silent as to the form of the instrument or instruments by which the insolvent may effect an assignment." And in *Hanford Oil Co.* v. *First Nat. Bank*, 126 Ill. 584, the Supreme Court said, on page 591: "All acts of the debtor performed with the intent and for the purpose of effecting a disposition of all his property for the benefit of his creditors are to be regarded as a single transaction, each constituting part of the general assignment of his assets under the statute."

When the debtor undertakes to dispose of all his property for the benefit of his creditors, giving a preference, he being insolvent or contemplating insolvency, the fact that he has failed to appoint a trustee, as contemplated by law, will not render the assignment valid, as against creditors objecting to it.    *Burrows* v. *Lendorf*, 8 Iowa, 96.

Counsel for appellee contend that it was not the intention of Barker or the bank, at the time of the execution of the instruments in writing in question, to make a voluntary assignment.    But *Farwell* v. *Cohen*, 138 Ill. 216, has settled that question.

All the acts of the debtor, performed with the intent and for the purpose of effecting a disposition of all of his property for the benefit of his creditors, are to be regarded as a single transaction, as is held in *Hanford Oil Co.* v. *First Nat. Bank*, 126 Ill. 584.

TENNEY, MCCONNELL & COFFEEN, for appellee:

By an unbroken line of decisions the proposition is established that the assignment for the benefit of creditors, referred to in the statute, is the conveyance known by that description at common law. It is not a creation of the statute. *Weber* v. *Mick*, 131 Ill. 520; *Young* v. *Clapp*, 147 id. 176; *Farwell* v. *Nilsson*, 133 id. 45; *Schroeder* v. *Walsh*, 120 id. 403; *Walker* v. *Ross*, 150 id. 50; *Bank* v. *Lumber Co.* 41 Ill. App. 383; *Cutlery Co.* v. *Joseph*, 44 id. 194.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

The appellants entered a motion in the Appellate Court to dismiss the appeal, on the ground that the appeal in a case of this character did not lie to the Appellate Court, but to the circuit court. The Appellate Court denied the motion, and that decision is relied upon as error. This court has held in a number of cases that the Appellate Court has jurisdiction of an appeal from a decree or judgment of the county court in a case of this character, and the question may be regarded as settled. See *Union Trust Co.* v. *Trumbull*, 137 Ill. 146 ; *Heinzelman* v. *Schrader*, 150 id. 227 ; *Levy* v. *Chicago Nat. Bank*, 158 id. 103.

The next question presented by the record is whether the facts proven on the hearing in the county court showed that an assignment for the benefit of creditors had been made. It appears from the evidence that in the spring of 1893 S. B. Barker was engaged in an extensive lumber business. He owned a planing mill and yard in Chicago carried on under the name of S. B. Barker & Co. He had another yard in Chicago carried on in the name of A. H. Caryl & Co., of which he was the principal owner. He also owned a lumber yard in Kansas City, which was conducted under the name of the Farmers and Mechanics' Lumber Company. He also owned a large amount of pine and mineral lands. He had a homestead in Chicago valued at $60,000. Barker, during the year 1892 and in the

early part of 1893, was a heavy borrower from the Union National Bank of Chicago. In May, 1893, his liability to the bank, directly and indirectly, amounted to near $400,000. In the latter part of May the bank determined to make no further advances to Barker, and undertook to obtain security for the amount he was indebted. On the 27th day of May, 1893, the bank transferred to Mrs. F. M. Perkins two notes against Barker for $105,000, and a $20,000 note against Caryl & Co., in exchange for which she gave her personal obligation to the bank. This was done to avoid taking security for a large amount in the name of the bank. On the 29th of May the officers of the bank met Barker at the office of the bank's attorney, and informed him that no further extension could be given him and that the debt must be secured. After considerable negotiation an agreement was reached and a paper was executed by Barker to the bank, dated May 29, 1893, conveying all debts, moneys, demands, accounts, choses in action, notes, drafts or other evidences of debt due or owing or belonging to him, under his own name or that of S. B. Barker & Co., or under the name of the Farmers and Mechanics' Lumber Company, or any other name under which he had been doing business, together with all books of account or other documents containing or referring to the same or used in his business, in Chicago or elsewhere, and authorizing the bank to take immediate possession of such books and papers, and collect all sums of money due him, by suit or otherwise, the proceeds of such collection, including necessary attorneys' fees, to be applied by the bank toward the discharge of his indebtedness to it, whether such indebtedness be due or not, whether direct or contingent, whether on open account, overdraft, or as maker, endorser, acceptor or guarantor of any commercial paper now or hereafter held by the bank or otherwise, and whether his liability be several or joint with others, the surplus, after paying in full all expenses of collection and all his debts and liabilities to

the bank, to be returned to him.   On the same day an assignment under seal, similar in form to the foregoing, was made by A. H. Caryl & Co. to the bank.   The following mortgages were also executed: A chattel mortgage by A. H. Caryl & Co., dated May 29, 1893, to F. M. Perkins, covering the lumber yard, implements, etc., at Parkside, in the city of Chicago, to secure the note of the mortgagor for $23,000, dated May 25, 1893, due on demand, which contained the usual clause allowing the mortgagor to retain possession of the property until default be made in payment of the debt, etc., and authorizing the mortgagee, upon default, or upon feeling unsafe and insecure, or fearing diminution, removal or waste of the property, to take immediate possession and foreclose the mortgage by sale at public auction, on ten days' notice, or at private sale with or without notice, the proceeds of the sale to be applied in the payment of the debt and the surplus returned to the mortgagor.   A chattel mortgage similar in form to the foregoing, dated May 29, 1893, from Samuel B. Barker to F. M. Perkins, covering the stock of lumber, wagons, planing mill property, etc., on South Wood street and Blue Island avenue, Chicago, to secure the note or notes of the mortgagor, evidencing his indebtedness to the mortgagee.   A chattel mortgage similar in form to the foregoing, dated May 29, 1893, from Samuel B. Barker to F. M. Perkins, covering lumber yard, fixtures, etc., of the mortgagor, used by him in carrying on the business at Kansas City, under the name of the Farmers and Mechanics' Lumber Company, securing the notes of the mortgagor held by said mortgagee.   A chattel mortgage similar in form to the foregoing, dated May 11, 1893, from Samuel B. Barker to F. M. Perkins, covering lumber in Ontonagon county, Michigan, securing the notes of the mortgagor held by the mortgagee.   A chattel mortgage similar in form to the foregoing, dated May 29, 1893, from Samuel B. Barker to F. M. Perkins, covering lumber situated at Ashland and Washburne, Wisconsin, securing

the payment of the mortgagor's notes held by the mortgagee. A chattel mortgage similar in form to the foregoing, dated May 29, 1893, from Samuel B. Barker to F. M. Perkins, covering the steamer "Berrien" and securing the payment of the mortgagor's note held by the mortgagee. Barker turned over his homestead to his wife, but the bank had nothing to do with that transaction. It was in no manner connected with the contract consummated between Barker and the bank. The county court held that the two foregoing transfers of accounts and the five chattel mortgages executed by Samuel B. Barker in law constituted a voluntary assignment for the benefit of creditors.

In *Weber* v. *Mick*, 131 Ill. 520, in considering the question what constituted an assignment, it was held that a voluntary assignment is an instrument in writing executed by a failing debtor, by which he assigns or transfers to some third person, as assignee, the whole or the bulk of his property, to be by such trustee distributed among the assignor's creditors in satisfaction of their demands. It differs materially from a mere sale in payment of a debt, and also from a pledge of property in the nature of a mortgage. It was also there held that a fundamental distinction between a mortgage and an assignment is, that a mortgage is a mere security for a debt, the equity of redemption remaining in the mortgagor, while an assignment is an absolute appropriation of the property to its payment. It does not create a lien, but passes the legal and equitable title to the property absolutely, beyond the control of the assignor. In *Walker* v. *Ross*, 150 Ill. 50, a case in its facts quite similar to the one under consideration, after referring to cases it is among other things said (p. 56): "These cases further hold that there must be an absolute transfer of the whole interest of the assignor, legal and equitable, in the property assigned, in trust for the benefit of creditors, and hence that absolute conveyances made directly to the creditor in payment, or

159—30

any form of lien so given as security for the payment, of a *bona fide* debt, though having the effect to give him a preference, is not an assignment for the benefit of creditors, within the meaning of the statute." See, also, *Farwell* v. *Nilsson*, 133 Ill. 45; *Price* v. *Laing*, 152 id. 380; *Young* v. *Clapp*, 147 id. 176.

Under the cases cited it is plain that in order to create an assignment, within the meaning of the statute, the property must be conveyed to a trustee or assignee, who is to sell it absolutely, and not on a contingency, and distribute the proceeds among the creditors. The conveyance or assignment must pass the legal and equitable title, with no right of redemption in the debtor. The assignment must be in writing, and the writing create the trust and cut off all equity of redemption. The transaction in question did not contain these requirements. The two writings transferring the accounts to the bank show upon their face that the accounts are transferred as security for the payment of an indebtedness to the bank. After the bank's debt is paid the surplus goes to the grantor, and not to creditors. The other papers executed on May 29,—the day the transaction was concluded,—were mere chattel mortgages, given as security for certain indebtedness due from Barker to the bank, which the bank had transferred to Mrs. F. M. Perkins to avoid publicity as to the amount of the debt due from Barker to the bank. Where a person owes a debt and desires to secure it, he has the same right to secure the debt by the execution of a mortgage now as he had before the Assignment act became a law of the State, and when a debtor in good faith executes a mortgage to secure a *bona fide* debt, we are aware of no principle upon which it can be held that the debtor has made a voluntary assignment for the benefit of creditors.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*